IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL B. WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 4762 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Early on February 7, 2006, as counsel for the parties and this Court were in the courtroom awaiting arrival from the second floor jury lounge of the venire for the trial of this 42 U.S.C. §1983 ("Section 1983") action that was scheduled to begin that morning, this Court previewed for counsel the brief skeletal summary of the case that it planned to give to those prospective jurors in the course of the voir dire process for jury selection. Counsel for defendant City of Chicago ("City") immediately objected that the skeletal summary did not appropriately describe the City's proposed <u>Monell</u>-based challenge to the Section 1983 claim of plaintiff Daniel Waters ("Waters").

This Court just as promptly demurred to the fashion in which City's counsel were characterizing that issue, relying as they did on an inappropriately constricted perception of <u>Monell</u>. City's counsel then complained that this Court had earlier denied City's Fed. R. Civ. P. ("Rule") 56 motion for summary judgment without giving counsel the opportunity to elaborate on that

issue.  Although that contention was lacking in substantive merit,[1] this Court felt that proceeding to trial with that question unresolved would be highly undesirable.  So it released the venire and authorized the filing by City of a belated reply addressed to the Monell subject, so as to permit that subject to be dealt with before the case went to trial.

Now City's counsel have submitted their Reply Memorandum, which begins with this characterization of the decision in Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978):

> A municipality is not liable under §1983 unless the deprivation of constitutional rights is caused by a municipal policy or custom.

As is too often overlooked by counsel, the reference to "a municipal policy or custom" (although spoken of in those terms in Monell) is overly restrictive to the extent that the language suggests the need for a <u>pattern</u> of conduct on the part of a municipality.  Not so, for in contrast to the real target of Monell--the inapplicability of respondeat superior principles as a basis for municipal liability under Section 1983--the fact that

---

[1]  This Court did indeed deny City's Rule 56 motion without allowing the filing of a reply memorandum.  That however was a perfectly appropriate application of the familiar principle that once a party responding to a Rule 56 motion has identified a genuine issue of material fact that would preclude summary judgment (as Waters' counsel had done in his required Rule 56 response), nothing that the movant can offer up by way of reply as to its version of the facts can stave off the rejection of the summary judgment motion--just as an omelette, once scrambled, cannot be stuffed back into the eggshell.

2

a municipality (like any other corporate entity) must by definition act through an individual or individuals means that a single constitutional violation by the ultimate decisionmaker may trigger Section 1983 liability.

Indeed, City's own R. Mem. 1 acknowledges as much in its very next sentence, where it cites Kujawski v. Bd. of Comm'rs, 183 F.3d 734, 737 (7th Cir. 1999) as confirming the third way in which such liability may arise:

> causation of the loss by a person with final policymaking authority.[2]

And Kujawski, id. (citation omitted) follows that statement with these equally well-established concepts for identifying the ultimate policymaking authority:

> A person's status as a final policymaker under §1983 is a question of state or local law. Final policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority.

Where City's counsel go astray in this case is in advancing the following line of analysis as assertedly dispositive of the issue (R. Mem. 2, 3):

> Waters does not allege any direct wrongdoing in this case on the part of the City's employment policymakers, i.e. the City Council or the Commissioner of the Department of Personnel. The highest official Waters implicates is Stan Kaderbek, who was a Deputy Commissioner for the Department of Transportation.

---

[2] [Footnote by this Court] Kujawski is of course only one of a host of cases that confirm the selfsame principle.

3

\* \* \*

> In this case, Stan Lee Kaderbek, who made the recommendation to terminate Waters' employment, is not a final policymaker of the City of Chicago. Nor was the Commissioner of CDOT [Chicago Department of Transportation], Judith Rice, who made the final decision to terminate Waters' employment.

That approach ignores two fundamental factors:

    1. As the earlier quotation from <u>Kujawski</u> reflects, either the delegation by the ultimate decisionmaker to someone lower in the food chain or the ratification of that someone's decision by the ultimate decisionmaker can equate in legal terms to the required action by the decisionmaker himself, herself or itself. Were it otherwise, a municipality could deliberately insulate itself from liability by placing all decisions in the hands of others and "consequently" disclaiming any responsibility--something that Section 1983 caselaw neither supports nor tolerates.

    2. Over and above that proposition, the caselaw also uniformly recognizes that if the ultimate decision is poisoned by discriminatory or retaliatory motivation on the part of another person whose input is critical to the ultimate decision, it does not matter that the ultimate decisionmaker is as pure as driven snow--Section 1983 liability can be imposed.

As for the first of those factors, <u>Kujawski</u> is, as already stated, only one of many cases that stand for the stated

4

principle.  And as for the second, the seminal case in this Circuit is Dey v. Colt Constr. Co., 28 F.3d 1446, 1459 (7th Cir. 1994)--but once again a host of cases has stated and applied the identical principle:  see, e.g., the extended discussion as to the means at trial of upholding a retaliation claim in Byrd v. Ill. Dep't of Pub. Health, 423 F.3d 696, 705-08 (7th Cir. 2005) and the opinions in such cases as Lust v. Sealy, Inc., 383 F.3d 580, 584-85 (7th Cir. 2004), Rogers v. City of Chicago, 320 F.3d 748, 754 (7th Cir. 2003) and Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1010 (7th Cir. 2000); cf. Mateu-Anderegg v. Sch. Dist. of Whitefish Bay, 304 F.3d 618, 626-27 (Ripple, J., concurring); and see further the other cases cited in each of those opinions.  To be sure, those statements of principle were voiced in the context of statutory employment discrimination or retaliation claims, but the concept for which they stand is equally applicable here.

In that respect, City's counsel attempt to load more baggage onto our Court of Appeals' opinion in Auriemma v. Rice, 957 F.2d 397, 399 (7th Cir. 1992) and onto this Court's opinion in Limes-Miller v. City of Chicago, 773 F. Supp. 1130, 1136 (N.D. Ill. 1991) than those decisions can properly carry.  Neither of those cases addresses the doctrine that a tainted input may cause the final decision, even though the decisionmaker himself or itself

may be free of taint, to establish liability.[3]

In sum, the scenario portrayed by Waters (which must be credited for Rule 56 purposes) does not run afoul of the Monell proscription of respondeat superior liability. Nothing submitted by City's counsel, and nothing known to this Court, states that the power to fire vested in the City Council or the Commissioner of the Department of Personnel is nondelegable. If in fact that decision was permitted to be made in this case by Department of Transportation Commissioner Judith Rice without review, that equates to her being the authorized final decisionmaker. And if instead the City Council or the Department of Personnel's Commissioner signed off on the firing without independent substantive review, the legal consequence is the same. In either event the assertedly retaliatory motive on the part of Stan Lee Kaderbek would have poisoned the final decision that accepted his recommendation, thus triggering Section 1983 liability on City's part.

It should of course be understood that this Court is expressing no view as to the sufficiency of any proof that may be offered at trial on the issues dealt with in this opinion. Nor does this Court opine on the other point advanced in City's Reply

---

[3] Although City's original memorandum in support of its motion for summary judgment had also cited Auriemma and Limes-Miller, that too was framed in the same flawed fashion that has been discussed here.

6

Memorandum--that is, the extent to which Waters can or cannot establish the alternative predicate for municipal liability under Monell: the existence of a policy or custom in the more customary[4] sense of those terms.

Accordingly the earlier denial of City's Rule 56 motion for summary judgment is reconfirmed. This action will proceed to trial promptly, at a date to be established as soon as the parties can confirm the times of their availability and that of their respective witnesses. This Court's minute clerk will communicate with counsel to set up a status date to discuss the resetting of a trial date.

                                       *[signature]*
                                       Milton I. Shadur
                                       Senior United States District Judge

Date: February 15, 2006

---

[4] Bad pun intended.